**SO ORDERED.**

**SIGNED this 17th day of June, 2015.**



_____
Janice Miller Karlin
United States Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:                                    Case No.  12-40260
**Frederick Mark Inyard,**                **Chapter 13**

        **Debtor.**
_____
### Memorandum Opinion and Order Granting
### Motion for Hardship Discharge

Did Congress intend to allow a discharge for those debtors who die

before they complete the payments required under their confirmed Chapter

13 plans? Although deceased debtors presumably no longer care about the

answer to that question, their heirs and creditors sometimes do. And that is

the situation here.

One of Debtor Frederick Inyard's post-petition creditors—Josh

Saunders—was named administrator of Debtor's decedent estate in state

probate court,[1] giving him standing to file a motion for hardship discharge in this bankruptcy case.[2] The Chapter 13 Trustee (Trustee) objected to the motion, arguing that, as a matter of law, the Court has no authority to grant a hardship discharge after a debtor's death. Because the Court holds that it does have that authority under 11 U.S.C. § 1328(b) and Federal Rule of Bankruptcy Procedure 1016, and because such a discharge is appropriate under the facts here, the administrator's motion is granted.

## I.    Findings of Fact

The parties agree on the facts necessary to resolve this motion.[3] When Debtor voluntarily filed for relief under Chapter 13 in March 2012, he claimed to be 79 years old, was receiving Social Security benefits,[4] and listed total liabilities of $60,753.[5] Creditors filed claims totaling $41,573.[6] By the time he died in August 2014, Debtor had paid $20,148 towards completion of his Chapter 13 Plan—$16,203 of which came from his post-petition

---

[1] Doc. 89 at ¶11.

[2] Doc. 91.

[3] Doc. 101, Stipulation of Facts.

[4] Debtor included his age on Schedule I, which was filed under penalty of perjury. He noted in response to Question 2 in his Statement of Financial Affairs that the main source of income was Social Security. Doc. 1.

[5] Doc. 101, Stipulation of Facts ¶ 2.

[6] *See* Claims Register Summary within the Court's CMECF records.

-2-

liquidation of non-exempt personal property.[7] Trustee used approximately $14,934 of that sum to satisfy priority claims and to make a pro rata payment to unsecured creditors who had filed claims, and he used the remainder to pay trustee and attorney fees.[8] Since Debtor was a below medium income debtor, he should have completed the plan payments within three years—a time period that would have expired by now if he started making plan payments when required by statute and if he had made them consistently. As it is, Debtor made 29 plan payments and has a base balance still owed of $525.00 (7 more payments of $75.00).[9] This means to complete his entire plan and receive a discharge, he was only $525 short. These remaining payments would have gone towards repayment of a small additional pro rata portion of the claims of unsecured creditors.

Debtor's only scheduled asset of any significant value when he filed his case was his exempt homestead, which he valued at $95,200 (with no mortgage debt). Aside from the property he auctioned before confirmation,[10] Debtor's other scheduled property consisted only of an exempt pickup,

---

[7] Doc. 101, Stipulation of Facts ¶¶ 4–5.

[8] Doc. 97, Trustee's Report of Receipts and Disbursements.

[9] Doc. 101, Stipulation of Facts ¶ 5.

[10] Doc. 48.

Case 12-40260    Doc# 103    Filed 06/17/15    Page 3 of 21

miscellaneous exempt household goods, clothing, and jewelry, as well as several nonexempt vehicles, all of inconsequential value.

## II.    Conclusions of Law

### A.    Jurisdiction.

The court has jurisdiction over this case under 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), over which the Court has the authority to enter a final order.

### B.    Analysis.

Under 11 U.S.C. § 1328(b),[11] a bankruptcy court may grant a hardship discharge at any time after confirmation of a plan, even when plan payments have not been completed. Federal Rule of Bankruptcy Procedure 4007(d) dictates the procedure to be followed in hardship discharge proceedings; it requires that all creditors be given notice of the deadline to both object to the motion and to file any objections to discharge under § 523(a)(6). No creditor filed an objection to the motion or an adversary proceeding seeking a determination of dischargeability, notwithstanding the mailing of that notice to creditors. Only the Chapter 13 Trustee has objected to the motion.[12]

---

[11] All future statutory citations will be to Title 11 of the United States Code, unless otherwise noted.

[12] Doc. 91.

The debtor bears the burden of proof when seeking a hardship discharge,[13] and so the debtor—or his designee—must prove all three elements of 11 U.S.C. § 1328(b):

> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
> (3) modification of the plan under section 1329 of this title is not practicable.

The Trustee agrees that Debtor's failure to complete his plan payments is due to circumstances for which he should not justly be held accountable[14] and that unsecured claimants have received even more than they would have received had Debtor originally filed a Chapter 7 case.[15] He also agrees that modification of the plan is not practicable.[16] These admissions by the only

---

[13] *Roberts v. Boyajian* (*In re Roberts*), 279 F.3d 91, 93 (1st Cir. 2002)(holding that "[t]he ultimate evidentiary burden to establish an entitlement to a hardship discharge under Bankruptcy Code § 1328(b)(1) rested upon [the debtor]").

[14] Doc. 95, Objection to Motion for Hardship Discharge ¶ 3(a).

[15] Doc. 101, Stipulation of Facts ¶ 11.

[16] Doc. 95, Objection to Motion for Hardship Discharge ¶ 3(c). Trustee also agrees that other potential statutory barriers to discharge are inapplicable here, admitting: 1) it is now impossible for Debtor to complete the Personal Financial Management Course required by §1328(g)(1), *id.* at ¶ 3(d); 2) Debtor has not

-5-

objecting party would typically be sufficient to warrant granting a motion for hardship discharge, but the Trustee here contends both that, as a matter of law, a deceased debtor is ineligible for a hardship discharge, and that, even if a deceased debtor may be granted a hardship discharge, such a discharge is not warranted in this case.

As a result, the Court must make two determinations here. First, the Court must determine whether a deceased debtor is eligible for a hardship discharge when death is the only factor rendering him unable to complete his plan. Second, because the Court answers that question in the affirmative, the Court must determine whether a hardship discharge is warranted under the facts of this case.

Federal Rule of Bankruptcy Procedure 1016, entitled "Death or Incompetency of Debtor," governs bankruptcy proceedings following the death of a debtor. It states, in pertinent part:

> If [an] . . . individual's debt adjustment case is pending under . . . chapter 13 [when a debtor dies], the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may

---

previously received a discharge under any Chapter , *id.* at ¶ 3(e); 3) Debtor claimed a homestead exemption below the statutory amount for debtors who meet certain criteria under 11 U.S.C. §522(q)(1)(A), *id.* at ¶ 3(f); and 4) Trustee has no knowledge of any proceeding pending in which the Debtor may be found guilty of a felony as described in 11 U.S.C. § 522(q)(1)(A) or any liability for a debt of the kind described in §522(q)(1)(B), *id.* at ¶ 3(g).

-6-

> proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Under Rule 1016, then, either this case may be dismissed, or, if the Court determines that further administration of the case is possible and is in the best interest of the parties, the case may proceed and be concluded in the same manner as though Debtor were still alive.

As a preliminary matter, the Court must determine whether the administrator of Debtor's probate estate is an appropriate party to pursue further administration of the case. Interestingly, Rule 1016 does not require that another party be substituted for the debtor, and, indeed, there appears to be no mechanism in the Rules to allow for substitution of another party with regard to the normal administration of the case. This becomes more complicated in two situations.

First, under Fed. R. Bankr. P. 7025, Fed. R. Civ. P. 25 applies in adversary proceedings and requires substitution of a new party for the deceased debtor if the claims at issue survive the debtor's death and the case requires the debtor's (or, rather, the debtor's representative's) participation to continue. Absent a motion to substitute, the debtor's death would lead to dismissal of the adversary. Second, under Fed. R. Bankr. P. 9014, "unless the court directs otherwise," Fed. R. Civ. P. 25 applies in all contested matters,

including objections to a motion for a hardship discharge.[17]

At a hearing in November 2014, on the Trustee's Motion to Dismiss[18] and creditor Josh Saunders' objection to that motion, the Court ordered that the case be dismissed unless "within 60 days an Administrator in State Court is appointed and files something in this Court in response to the Motion to Dismiss." In response, the administrator sought and received that appointment from the state court.[19] Since that time, this bankruptcy case has proceeded with the administrator representing Debtor's interests. As a result, the Court will not require strict compliance with Fed. R. Civ. P. 25 (that Saunders be substituted as the debtor), as is the Court's prerogative under Fed. R. Bankr. P. 9014.

The Court also notes that the mere existence of all these rules governing the need for substitution—or the lack thereof —suggests that

---

[17] The Rules do not clarify what happens when a debtor dies and there is no pending adversary or contested matter. Intuiting from the procedures in those cases, however, it appears that a representative of the debtor's estate could proceed with administration of the case. There does not appear to be a procedural requirement for substitution in that case, but the issue is not before the court. Indeed, anything that would bring such a situation before the Court, such as an objection to a motion or the filing of an adversary proceeding, would bring the issue within the boundaries of Fed. R. Bankr. P. 9014 or 7025, which would allow substitution of another party for the deceased debtor.

[18] Doc. 85.

[19] Doc. 89.

Congress knew bankruptcy cases could continue after a debtor's death, at least in some circumstances. And certainly, some party must act on the Debtor's behalf, if the case is to continue as permitted by Rule 1016.

A recent Northern District of Illinois case is persuasive on this issue:

> Rule 1016 permits a case to continue despite the death of the debtor without the formal substitution of another party for the debtor. The case can only "continue" or "proceed" if someone is permitted to act in the bankruptcy case on behalf the deceased debtor. If no party could ever act on behalf of a deceased debtor because there is no separate rule specifically providing for formal substitution, the provisions in Rule 1016 allowing a case to continue after the debtor's death would be meaningless. The only interpretation that gives meaning to these provisions in the rule is that no formal substitution is necessary. . . . Under Rule 1016, an appropriate representative of the debtor may act on behalf of the debtor without a formal substitution.[20]

The Trustee here does not dispute that movant is a proper representative of the deceased Debtor, nor that a deceased debtor can pursue administration of the case.[21] Further, no one disputes that a person's eligibility to file a

---

[20] *In re Kosinski,* No. 10 bk 28949, 2015 WL 1177691, at *3 (Bankr. N.D. Ill. March 5, 2015). As noted above, when another party to the case objects or otherwise creates a contested matter, under Fed. R. Bankr. P. 9014, "unless the court directs otherwise," Fed. R. Civ. Proc. 25 applies and would require substitution.

[21] *See In re Shepherd*, 490 B.R. 338, 340 (Bankr. N.D. Ind. 2013) (seeking a hardship discharge for a deceased debtor does not require replacing the debtor with another entity).

bankruptcy petition is determined at the commencement of a case,[22] and no party in interest objected to Debtor's eligibility to file his bankruptcy when he did so in 2012. In light of these facts, the Court holds that the administrator is an appropriate party to pursue further administration of the case. Having resolved that preliminary procedural matter, the Court turns to the Trustee's arguments.

### 1. A deceased debtor remains eligible for a hardship discharge when death is the only factor rendering him unable to complete his plan.

The Trustee first argues that, as a matter of law, Rule 1016 precludes a hardship discharge for a deceased debtor. In short, he reads Rule 1016's allowance of "further administration of the state . . . in the same manner, so far as possible, as though the death or incompetency had not occurred" as barring a hardship discharge **based on Debtor's death**, arguing that considering a debtor's death as the reason for the discharge is inherently not proceeding as though the death had not occurred.[23] In other words, the Trustee seems to suggest that only if someone agrees to and does pay the remaining plan payments on behalf of the deceased debtor could a discharge be granted, and that a hardship discharge would never be available.

---

[22] *Id.* at *5.

[23] Doc. 95.

-10-

Courts that have addressed this question are split, but the vast majority hold that Rule 1016 does not, as a matter of law, bar a hardship discharge for a deceased debtor, even if no further payments are made after death.[24] The parties cite no binding precedent on this issue, and the Court has found none.

Certainly, the rule is susceptible to the Trustee's interpretation, but the rule could be read just as easily to allow discharge. In other words, one could also interpret the statute to allow the case to proceed in the same manner as if the debtor were still alive but unable to make payments due to circumstances for which the debtor should not justly be held accountable, that is, to allow the hardship discharge. The only difference between the normal hardship discharge and the discharge sought in this case is the debtor's death.

Under Rule 1016, the Court should conclude the case "in the same manner, so far as possible, as though the death or incompetency had not occurred,"[25] and in the case of a deceased debtor, that could be read to

---

[24] *See Kosinski,* 2015 WL 1177691, at *2 ("Almost all courts addressing this issue have reached the same conclusion, with some noting that a hardship discharge is not only available but is "the only reasonable alternative."); *In re Frank Lizzi*, Nos. 09–10097, 10–13875, 2015 WL 1576513, at *4 (Bankr. N.D.N.Y. April 3, 2015)("A majority of courts agree that a hardship discharge is available to a deceased debtor.").

[25] Fed. R. Bankr. Proc. 1016.

**prevent** the Court from denying the debtor a discharge solely because he is dead. The Court finds no suggestion in the Rules or the Code that the "further administration" of the case envisioned by Rule 1016 cannot include administration via a hardship discharge.[26]

Although both of these readings of the rule are plausible, "there is nothing in the Code prohibiting a deceased debtor from receiving a hardship discharge."[27] Particularly, nothing in § 1328(b) limits the hardship discharge to a living debtor. And, given that the Federal Rules are not to "abridge, enlarge, or modify any substantive right,"[28] the Court hesitates to interpret Rule 1016 to limit any debtor's substantive right to a hardship discharge.[29]

---

[26] *In re Hoover*, No. 09–71464, 2015 WL 1407241, at *2 (Bankr. N.D. Cal. March 24, 2015)("[F]urther administration of the case can encompass a hardship discharge."). In addition, the Trustee was holding $325 as of May 1, 2015 that was paid in by the Debtor before his death, but which remained undisbursed when the most recent Trustee Report was filed May 1, 2015. *See* Doc. 97. Those funds are thus also apparently available for further administration.

[27] *Lizzi*, 2015 WL 1576513, at *4 (finding deceased debtors should be granted hardship discharge even though creditors holding priority claims had not yet been paid in full, and unsecured creditors had received nothing).

[28] 28 U.S.C. § 2705.

[29] Some commentators have argued that 28 U.S.C. § 2705's prohibition on bankruptcy rules that "abridge, enlarge, or modify any substantive right" prevents a court from even considering Rule 1016 when evaluating a deceased debtor's request for a hardship discharge, although few or no courts appear to have taken this position. Alan M. Ahart, *Whether to Grant a Hardship Discharge in Chapter 13*, 87 Am. Bankr. L.J. 559, 575 n.127 (2013)("Where the matter before the court is the deceased debtor's motion for a hardship discharge, the court must not evaluate whether further administration of the case is possible or in the best interest of the

-12-

The hardship discharge has a long lineage, dating to the 1938 Chandler Act.[30] The modern version of the hardship discharge originated in the Bankruptcy Reform Act of 1978, when Congress liberalized the requirements for a hardship discharge by striking Chandler Act language requiring the debtor himself to apply for the discharge and by eliminating a time-in-plan requirement, among other changes.[31] This liberalized standard appears to have led to an increase in the discharges issued to deceased debtors. Indeed, many of the early hardship discharge cases—decided soon after the 1978 Code was enacted— explicitly limited the discharge to cases of deceased debtors,[32] and Congress has made no move to restrict this practice during the thirty plus years that have followed. In light of this history and of the plain language at issue, the Court holds that neither the text of § 1328(b) nor Rule 1016 bar a deceased debtor from receiving a hardship discharge.[33]

---

parties under Federal Rule of Bankruptcy Procedure 1016. The court should simply determine whether the three elements for a hardship discharge under Bankruptcy Code § 1328(b) have been satisfied. The court must not consider Rule 1016 because no Bankruptcy Rule may abridge, enlarge or modify any substantive right, such as the right to a hardship discharge where all of the statutory requirements have been met. *See* 28 U.S.C. § 2075 (2012).").

[30] *Id.* at 560–61.

[31] *Id.* at 562.

[32] *Id.* at 563.

[33] *Cf. Lizzi*, 2015 WL 1576513; *Hoover*, 2015 WL 1407241; *Kosinski*, 2015 WL 1177691.

-13-

The Trustee argues against this position based on two recent cases from two Colorado bankrutpcy courts—obviously both within the Tenth Circuit—that each denied a deceased debtor a hardship discharge. In the first, *In re Fogel*,[34] the debtor died one month after plan confirmation. His wife, acting as his personal representative, continued making the payments required by the plan, but failed to inform the court of debtor's death until she had completed all payments. The court concluded that the debtor's wife was not a party, as envisioned by Rule 1016, and declined to consider her interests in a discharge.[35] The Court also held, with little explanation, that in a Chapter 13, "the continued existence of the debtor is crucial to the continued administration of case."[36]

The Court appears to give short shrift to Rule 1016, and fails to explain who *could* be an appropriate party to continue pursuing a deceased debtor's case, as envisioned by that rule. The Court may have determined that the debtor's wife was not truly acting as a personal representative of the debtor, but was instead merely acting in her own self interest, but this is not clear from the opinion. In any case, the Court does not find the reasoning in *In re*

---

[34] 512 B.R. 659 (Bankr. D. Colo. 2014).

[35] *Id.*

[36] *Id.* at 663.

-14-

*Fogel* persuasive, and declines to adopt that court's restrictive reading of Rule 1016.

The reasoning in the second case, *In re Miller*,[37] is also difficult to parse. The district court in *Miller*, reviewing a bankruptcy court decision, stated that, "In this case, the debtor has made no showing that a hardship discharge would be in the best interest of the parties to the bankruptcy case. A hardship discharge based on the death of the debtor does not satisfy the requirements of Rule 1016."[38] It is unclear from these statements, and from the remainder of the decision, if the district court found that a court could never grant a hardship discharge to a deceased debtor under Rule 1016, or whether, instead, it intended to hold that its particular debtor should not be granted a discharge under the specific facts of that case.

If the *Miller* court interpreted Rule 1016 to bar discharges as a matter of law for deceased debtors, this Court disagrees, for the reasons articulated above. If the basis for the district court's decision was that the facts of that case did not merit discharge, then that decision is easily distinguished.

Again, under the facts in *Miller*, the district court appeared to believe that the personal representative of the debtor based her argument that

---

[37] 526 B.R. 857 (D. Colo. 2014).

[38] *Id.* at 861.

continued administration (in the form of a discharge) was in the best interest of the parties solely on the benefits that would accrue to her, the personal representative. This Court agrees that Rule 1016 requires the Court to look more broadly. As Rule 1016 states, a court should continue administration of the case only if doing so is "in the best interest of the parties," not merely in the personal interest of a party who purports to represent the debtor's interest.

These two cases, which are not controlling authority for this Court, do not change the Court's analysis here. In both *Miller* and *Fogel*, the courts expressed concern about the fairness of granting a hardship discharge when that holding would result in wholly unsecured second mortgages being stripped from the surviving non-debtor spouse's home. Unlike the facts in both the Colorado cases, there is no mortgagee whose lien will be stripped if the hardship discharge is granted here, so the equities differ between those cases, and this one. As the *Miller* court noted, "Section 1328(b) provides that the court 'may' grant a discharge if the specified circumstances are shown. Use of the word 'may' indicates that the grant of such a discharge is within the discretion of the court."[39] And this Court is using that discretion to grant the discharge here.

---

[39] *Id.* at 862.

### 2. The best interest of the parties merits granting a hardship discharge in this case.

Having held that a deceased debtor may receive a hardship discharge as part of the further administration of his case, the Court turns to the second part of Rule 1016. Is it in the best interest of the parties to allow further administration, in the form of a hardship discharge, with final distribution of funds on hand pursuant to the confirmed plan? Where do the equities lie?

First, the Court considers the interests of the pre- and post-petition creditors.[40] The pre-petition priority creditors have already been paid in full, and there were no secured creditors.[41] A discharge would not impact the secured and priority creditors in any way.

The unsecured creditors have already received payments in a larger amount than they would have received if Debtor had filed his case under Chapter 7. Debtor's plan required him to liquidate certain non-exempt

---

[40] The Court considers the interests of the post-petition creditors because the administrator, in his capacity as a post-petition creditor, has filed motions in the case. *See, e.g.*, Docs. 84, 86, and 89. The Court also notes that, in his present role as administrator of Debtor's probate estate, the administrator has a fiduciary duty to represent the probate estate, not merely himself as only one post-petition creditor. *In re Lohse*, 207 Kan. 36, 37 (1971).

[41] Doc. 97, Trustee's Report of Receipts and Disbursements through May 1, 2015.

-17-

property, which sale he completed even before his plan was confirmed, and he thereafter paid into the estate the amount the Trustee agreed was necessary for distribution pursuant to the plan's provisions and applicable law.[42] And, significantly, after notice, not a single pre-petition creditor has objected to the grant of a hardship discharge. Because the unsecured creditors have already had some recovery—more than they would have been entitled to receive in a Chapter 7, and because none of those creditors object to discharge, the Court finds that it would not be inequitable to deny the unsecured creditors further recovery (by granting a hardship discharge).

This determination also finds support from the policy goals of the bankruptcy code. To deny a discharge under the facts of this case, when a deceased debtor is unable to complete his plan but has paid in more to his unsecured creditors than had he filed a Chapter 7, would discourage debtors from filing Chapter 13 proceedings because it would allow pre-petition creditors to seek additional recovery against his probate estate. That interpretation would defeat Congress's clear preference for debtors to attempt Chapter 13 plans.[43]

---

[42] Doc. 48 (requiring Debtor to pay $16,023.85 of the sale proceeds to the Trustee for payment of "trustee's fees, administrative attorney fees, priority taxes, and then to general unsecured claims") and § 1325(a)(4).

[43] *In re Woolsey*, 696 F.3d 1266, 1275 (10th Cir. 2012)(opting for an interpretation of the bankruptcy code that would not be "contrary to Congress's

Turning to post-petition creditors, the Court finds they would clearly benefit from a hardship discharge, because they will not have to share pro rata (in the assets of the probate estate) with the creditors whose claims were provided for, partially paid in the plan, and now (soon to be) discharged. Post-petition creditors, like Mr. Saunders, the movant and administrator, have had no recovery thus far from the bankruptcy estate, and equity favors allowing them the potential to have a possibly greater recovery within Debtor's probate estate by issuing a hardship discharge. Weighing the interests of all the creditors, then, the Court find that allowing the hardship discharge is equitable, in that it allows the best chance for all creditors to have some recovery.

Third, to the extent chapter 13 Trustees have additional interests separate and apart from the creditors' interests in whether courts should grant hardship discharges to deceased debtors under similar facts, there has been no showing that those unique interests are affected by granting a hardship discharge here. Thus, the Trustee's interest in preserving the integrity of the bankruptcy system is not jeopardized.

Lastly, equity favors giving this deceased Debtor the benefit of a hardship discharge. Debtor paid in over $20,000 to his bankruptcy estate, and

preference for individual debtors to use Chapter 13 instead of Chapter 7").

Case 12-40260    Doc# 103    Filed 06/17/15    Page 19 of 21

was attempting to fulfill the requirements of his confirmed plan when he died. He was 29 months into a plan that required payments over 36 months, and he owed only $575 to complete his plan and receive his "§ 1328(a) full compliance discharge."[44] Penalizing him (or his heirs, if their interests can even be considered) because he died when he had completed over two-thirds of the payments under the plan does not comport with the Bankruptcy Code's goal of giving deserving debtors a fresh start. The Court notes that it is appropriate to consider the equities with respect to the Debtor himself, because as noted above, despite his death, he remains eligible for further administration of his case, and he is an appropriate person for consideration when balancing the equities. He is represented by the administrator, and nothing in the Rules or the Code suggest that the Court should not continue to consider his interests when making this determination.

Balancing these interests, the Court determines that a hardship discharge is in the best interest of the parties to the case. The Motion for Hardship Discharge is granted, and the Trustee's objection to that motion is overruled.

As a final matter, the Court grants Debtor's request for a waiver of the personal financial management course requirement under 11 U.S.C. §

---

[44] Doc. 101, ¶ 3.

1328(g)(1). Under the plain text of that statute, the requirement "shall not apply with respect to a debtor who is a person described in section 109(h)(4)," which includes debtors unable to complete the course due to "incapacity, disability, or active military duty in a military combat zone." The Trustee agrees that Debtor's death rendered him unable to complete the course,[45] and the Court waives this requirement.

**It is, therefore, ordered** that the Debtor's Motion for Hardship Discharge is granted, and Debtor is excused from complying with the requirement under 11 U.S.C. § 1328(g)(1) to complete a course on personal financial management.

# # #

---

[45] *Id.* at ¶ 8.